UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ERIKA DREYER, as parent and natural guardian of B.B., et al., <br><br> Plaintiffs, <br><br> v. <br><br> IDAHO DEPARTMENT OF HEALTH AND WELFARE, an agency of the State of Idaho, et al., <br><br> Defendants. | Case No. 1:19-cv-00211-DCN <br><br><br> **MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendants State of Idaho, Idaho Department of Health and Welfare, Southwest Idaho Treatment Center, Jamie Newton, Billy King, Debra Luper, and Debra Combs' (collectively "Defendants") Motion to Dismiss (Dkt. 37), as well as Jason Miller and Leondre Edwards (collectively "Joining Defendants") Motion to Dismiss (Dkt. 38). The Court held oral argument on February 20, 2020, and took the matters under advisement.

Upon review, and for the reasons set forth below, the Court GRANTS in PART and DENIES in PART both Motions.

## II. BACKGROUND

On June 12, 2019, Plaintiffs filed a Class Action Complaint and Request for Injunctive Relief. Dkt. 1. On July 8, 2019, Plaintiffs filed an Amended Class Action

Complaint and Request for Injunctive Relief. Dkt. 7. In their Amended Complaint, seven named Plaintiffs assert twenty cause of action against eleven named Defendants and 100 "John and Jane Does." Dkt. 7, at 1-2.

Plaintiffs explain that the purpose of this case is to address "widespread abuse, neglect and mistreatment inflicted on current and former residents, including Plaintiffs and others similarly situated, of the Southwest Idaho Treatment Center ("SWITC"), a program operated by the Idaho Department of Health and Welfare ("DHW"), by known and unknown SWITC staff and condoned by SWITC administrators and DHW." Dkt. 7, at 3.

SWITC is a state-run institution that offers short-term crisis care for individuals with intellectual and developmental disabilities ("I/DD") who also have some combination of medical, behavioral, and mental health needs. It is not a hospital, it is not a penal institution, it is not a psychiatric care center. It is its own unique program.

SWITC has been in existence since the early 1900s. SWITC's campus was originally a 600-acre long-term placement facility that could house 1,000 residents. In 2009, however, Idaho developed and implemented an Olmstead plan[1] aimed at transitioning SWITC's residents, some of whom had lived at SWITC for years, into the community.

All of the individuals at SWITC have an I/DD, which is a cognitive impairment. Some residents have been committed to the care of DHW due to criminal activity or

---

[1] An *Olmstead* plan is a state's plan to deinstitutionalize individuals with I/DD and increase the number of those individuals utilizing community-based support. It derives from the U.S. Supreme Court's landmark decision in *Olmstead v. L.C. ex rel Zimring*, 527 U.S. 581 (1999).

MEMORANDUM DECISION AND ORDER - 2

because they have been found to be a threat to themselves or others. Other individuals are at SWITC because there is no other available community-based support that can successfully provide them care. Some residents have unusually high medical needs, and/or significant mental health diagnoses.

In 2017, SWITC resident Drew Rinehart committed suicide. That same year, SWITC failed two surveys performed by DHW, and six staff members left or were fired following substantiated abuse allegations by SWITC residents.

When SWITC became aware of the abuse allegations in 2017, it alerted DisAbility Rights Idaho ("DRI"), an advocacy and protection group with federal authority to monitor and investigate conditions in facilities that serve individuals with I/DD. SWITC shared thousands of pages of documents with DRI in an effort to be transparent. DRI reviewed those documents and drafted a report on its "findings." The Idaho Office of Performance Evaluations ("OPE") also completed a report on SWITC's operations, which was conducted in response to a legislative inquiry in March of 2018.

Relying on these reports, Plaintiffs' family members and guardians filed this lawsuit, asserting federal law claims and a number of individual state law claims against Defendants. Defendants and Joining Defendants assert Plaintiffs' Amended Complaint lacks factual and legal plausibility.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of

sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). "This is not an onerous burden." *Johnson*, 534 F.3d at 1121.

A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 678, 682 (2009).

In deciding whether to grant a motion to dismiss, the court must accept as true all well-pleaded factual allegations made in the pleading under attack. *Id.*, at 663. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).

In cases decided after *Iqbal* and *Twombly,* the Ninth Circuit has continued to adhere to the rule that a dismissal of a complaint without leave to amend is inappropriate unless it is beyond doubt that the complaint could not be saved by an amendment. *See Harris v. Amgen, Inc*., 573 F.3d 728, 737 (9th Cir. 2009).

# IV. ANALYSIS

Defendants asserts that Counts II through IX, Counts XII, XIII, and Counts XVI through XVIII should be dismissed in their entirety, with prejudice, because they are not legally plausible. Defendants assert that other counts, including the claims alleged by Plaintiff B.B., Counts III and IV (against the State of Idaho, DHW, and Jamie Newton), and Counts X, XI, and XV, should be dismissed because they suffer from factual deficiencies which fail to put Defendants on notice of such claims. Finally, Defendants assert Count XIX should be dismissed for a lack of standing, and that all claims against Luke Brisbane should be dismissed because no such person has been served. Joining Defendants agree in all respects with Defendants and move for dismissal on like grounds.

Neither Defendants nor Joining Defendants move for dismissal of Count I (violations of 1983), Count XIV (Negligence), or Count XX (Injunctive relief).

For organizational purposes the Court will group the claims in the manner the parties have. Additionally, unless otherwise noted, "Defendants" includes the individual Defendants outlined in docket 37 and Joining Defendants identified in docket 38. The Court will specify particular Defendants where appropriate.

## A. Count II – Violation of the Constitution of the State of Idaho

In Count II of the Complaint, Plaintiffs allege Defendants deprived them of "rights, privileges, or immunities secured or protected by [] Article I, Section [1] of the Constitution of the State of Idaho[.]" Dkt. 1, at ¶ 195.

Defendants collectively argue that the Idaho Constitution does not provide a private right of action under which a Plaintiff could allege violations of the Constitution of the

State of Idaho. Defendants are correct.

Plaintiffs claim there is a lack of statutory authority to support a conclusion one way or the other and cite limited Idaho Supreme Court cases and Federal District Cases for the proposition that Idaho state constitutional claims are in fact legitimate in Federal Court.

The cases cited by Plaintiffs do not clearly establish Plaintiffs' point, are limited in application, and do not change the fact that this Court has consistently held that no cause of action for monetary damages exists under the Idaho Constitution based on an alleged violation of a person's civil liberties.

As Judge Edward J. Lodge recently held: "this question has been clearly decided in this District. There is no 'direct cause of action for violations of the Idaho Constitution.'" *Hamell v. Idaho Cty.*, No. 3:16-CV-00469-EJL, 2017 WL 2870080, at *5 (D. Idaho July 5, 2017) (citing *Kangas v. Wright*, 2016 WL 6573943, at *6 (D. Idaho Nov. 4, 2016). *See also Thomas v. Cassia Cty., Idaho*, No. 4:17-CV-00256-DCN, 2019 WL 5270200, at *10 (D. Idaho Oct. 17, 2019) ("No Idaho authority suggests the existence of statutory or direct causes of action for violations of the Idaho Constitution.") (citing *Campbell v. City of Boise*, 345 Fed. Appx. 299, 300 (9th Cir. 2009); *McCabe v. Gonzales*, No. 1:13-CV-00435-CWD, 2015 WL 5679735, at *9 (D. Idaho Sept. 25, 2015) ("No direct cause of action exists for violations of the Idaho Constitution."); *Johnson v. City of Caldwell*, 2015 WL 5319012, at *17 (D. Idaho Sept. 11, 2015) (citing cases).

As Chief Magistrate Judge Ronald E. Bush explained in *Sommer v. Elmore Cty*.:

> Other courts in this District have ruled that the 'Idaho Constitution does not provide for a private cause of action for monetary damages based on an alleged violation of person's civil liberties.' *Boren v. City of Nampa,* No.

> CIV 04–084–S–MHW, 2006 WL 2413840, *10–11 (D. Idaho Aug. 18, 2006) (citing *Katzberg v. Regents of the Univ. of California,* 29 Cal.4th 300, 127 Cal.Rptr.2d 482, 58 P.3d 339 (2002); *Spurrell v. Bloch,* 40 Wash. App. 854, 701 P.2d 529, 535 (1985)). While acknowledging that the Supreme Court of Idaho 'has never specifically addressed this issue,' the federal district court in *Boren* was 'confident that [the Idaho Supreme Court] would not find a private cause of action.' *Id. Accord, Mott v. City of McCall,* CV–06–063–S–MHW, 2007 WL 1430764, *6 (D. Idaho May 14, 2007) ("there is no private cause of action for an Idaho constitutional law violation")

903 F. Supp. 2d 1067, 1074 (D. Idaho 2012).

Plaintiffs cite to *Bear Crest Ltd. LLC v. Idaho*, and Magistrate Judge Candy W. Dale's recent finding that because "Plaintiffs have asserted a viable federal claim . . . the Court has no basis to dismiss the state law breach of contract claim . . . or the claims against the County arising under the Idaho Constitution . . . ." No. 4:18-CV-00469-CWD, 2019 WL 3220575, at *5 (D. Idaho July 17, 2019). The Court's finding today is not inconsistent. Each of the State Constitutional claims asserted in *Bear Crest* had a federal equivalent and the question there was concerning supplemental jurisdiction. That is simply not the case here as Plaintiffs have only alleged a general violation of Article 1, Section 1 of the Idaho Constitution. No Idaho Court (State of Federal) has ever recognized such a generalized 1983-esque claim. Plaintiffs' reference to authority in Minnesota[2] is likewise insufficient to call this Court's prior holdings into question.

Because Plaintiffs are legally foreclosed from bringing Count II, Defendants' Motions are GRANTED in respect to Count II.

---

[2] Plaintiff's cite to *Am. Civil Liberties Union of Minnesota v. Tarek ibn Ziyad Acad.*, 788 F. Supp. 2d 950, 957 (D. Minn. 2011) and *Cruz-Guzman v. State*, 916 N.W.2d 1, 9-10 (Minn. 2018) to show that at least one other district has recognized a right of action under a state constitution despite the lack of a statutory scheme akin to Section 1983.

### B.  Counts III (ADA) and IV (Rehabilitation Act)

Count III of Plaintiffs' Amended Complaint alleges a violation of Title II of the Americans with Disabilities Act ("ADA") and Count IV alleges a violation of Section 504 of the Rehabilitation Act. Both are asserted against all Defendants.

Title II of the ADA and Section 504 of the Rehabilitation Act ("RA") both prohibit discrimination on the basis of disability. Title II of the ADA applies only to public entities, whereas the RA proscribes discrimination in all federally funded programs. Title II of the ADA provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities *of a public entity*, or be subjected to discrimination *by any such entity*.

42 U.S.C. § 12132 (emphasis added). Similarly, the RA provides:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).

For purposes of the RA, a "program or activity" means all of the operations of "a department, agency . . . or other instrumentality of a State." 29 U.S.C. § 794(b)(1)(A). And, for purposes of the ADA, "public entity" means any State or local government, any department, agency or other instrumentality of a State. 42 U.S.C. § 12131(1)(A), (B).

Here, the individual Defendants—i.e. the Defendants named in their individual

capacities—are not a "public entity" or a "department" or "agency" of the State.[3] *See* 42 U.S.C. § 12131(1)(A), (B); 29 U.S.C. § 794(b)(1)(A). As a result, neither Title II of the ADA nor Section 504 of the RA provide for individual capacity suits against state officials. *See Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("We find the reasoning of our sister circuits persuasive. We therefore join the Fifth, Eighth, and Eleventh Circuits and hold that a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act."); *Byerly v. Doe*, No. 1:19-cv-00230-BLW, 2019 WL 4667670, at *8 (D. Idaho Sept. 24, 2019) (holding that "unlike § 1983 claims, a Title II ADA claim must—by statutory definition—be brought against the state or the state entity"). Counts III and IV are therefore DISMISSED against the individual capacity defendants.

Defendants assert the above analysis likewise applies to the State of Idaho, DHW (including SWITC), and Ms. Newton in her official capacity. Defendants claim that because Plaintiffs: (1) fail to allege what "treatment, support, and services" they were excluded from; (2) fail to allege facts that reflect any purported discrimination occurred solely by reason of their disabilities; and (3) fail to allege that Defendants acted with deliberate indifference, their claims cannot withstand scrutiny. The Court disagrees.

Plaintiffs have—albeit broadly—in fact identified "treatment, support, or service[s]" they failed to receive. Not to put too fine a point on it, but that is what this entire

---

[3] Relying on *Byerly*, Plaintiffs assert that "to the extent Plaintiffs' ADA and Rehabilitation Act claims are asserted against individuals, such claims are treated as official capacity claims." Dkt. 41, at 9. While that reasoning does come out of the *Byerly* decision, it is inapplicable here as Plaintiffs' did not sue the individual capacity Defendants in their official capacities. The Court cannot simply convert the claims.

case is about: SWITC's alleged failure to provide appropriate treatment, support, and services to disabled individuals in various ways. The Court finds this sufficient to overcome the relatively low burden established by *Iqbal* and *Twombly*. Discovery will flesh out whether any actions were taken—or withheld—specifically on account of any Plaintiff's disability and/or whether any Defendant acted with deliberate indifference. Count III and Count IV may proceed against Defendants State of Idaho, DHW (including SWITC), and Ms. Newton in her official capacity.

### C.  Count V – Idaho Human Rights Act

In Count V, Plaintiffs allege the "Individual Capacity Defendants" violated the Idaho Human Rights Act ("IHRA"). Defendants assert that Count V must be dismissed for two reasons: 1) because the individual capacity defendants do not fall within the provisions of the IHRA, and 2) because Plaintiffs failed to file a complaint with the Commission on Human Rights—a condition precedent to filing suit.

The Court need not address Defendants' first reason for dismissal because the second requires dismissal. Idaho law is clear: "A complaint must be filed with the commission *as a condition precedent to litigation*." Idaho Code § 67-5908 (2) (emphasis added).

Plaintiffs asserts that "failure to exhaust" is not a bar to a cognizable claim, but rather an affirmative defense. The Court disagrees. As Defendants note, in making this assertion, Plaintiffs relied on cases dealing with the Prison Litigation Reform Act and the Freedom of Information Act—neither of which are applicable here.

MEMORANDUM DECISION AND ORDER - 10

This Court, relying on the Idaho Supreme Court, has long held that the IHRA's exhaustion requirement is mandatory, not optional. *See Wold v. El Centro Fin., Inc.*, No. CV-08-264-S-BLW, 2009 WL 1738464, at *2 (D. Idaho June 17, 2009) ("exhaustion of administrative remedies is a requirement to the filing of a claim under . . . the IHRA"); *McWilliams v. Latah Sanitation, Inc.*, 554 F. Supp. 2d 1165, 1184 (D. Idaho 2008) (Plaintiff's failure to file charge with the IHRA required dismissal of IHRA claim); *Bryant v. City of Blackfoot,* 48 P.3d 636, 642 (Idaho 2002) (finding that the IHRA imposes a procedural requirement of filing a complaint with the Idaho Human Rights Commission as a condition precedent to filing a lawsuit under IHRA and that the failure to do so would result in dismissal of claim).

The Court sees no reason to depart from that analysis here.

Plaintiffs put forth various "equitable" arguments for why they should be exempt from Idaho Code Section 67-5908's exhaustion requirement.[4] None, however, sound in caselaw or appear necessary in this case. Plaintiffs could have complied with the IHRA; they simply did not. Accordingly, Count V must be DISMISSED.

### D.  *Counts VI – IX – Negligence per se*

Counts VI, VII, VIII, and IX are all couched as 42 U.S.C. § 1983 "negligence per se claims" that rely on state and federal statutes to establish various duties of care. Defendants assert that these claims may be viable state or federal claims, but not under the

---

[4] The Court wishes to specifically call out Plaintiffs' argument that because Plaintiffs have diminished capacity, they should not be required to "act upon the complexities of statutory construction or discern an ostensible need for administrative review of discrimination . . . ." Dkt. 41, at 12. Plaintiffs are represented by competent Counsel who do understand statutory requirements. The burden is on them, not their clients.

guise of § 1983. Plaintiffs counter that each of these claims is "grounded in specific sections of the Medicaid Act," that under the *Blessing* test[5] Plaintiffs can establish that Medicaid rights are individually enforceable rights, and that Defendants are "elevat[ing] form over substance" in focusing on the titles of the claims rather than the underlying actions. Dkt. 41, at 26. The Court agrees in part with Plaintiffs, but nonetheless finds it appropriate to dismiss these claims as written so that the correct form can be maintained.[6]

The Ninth Circuit has expressly held "an agency regulation cannot create individual rights enforceable through § 1983." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 935-36 (9th Cir. 2003); *Price v. City of Stockton*, 390 F.3d 1105, 1112 n.6 (9th Cir. 2004) ("It is now well settled that regulations *alone* cannot create rights enforceable through either an implied right of action or Section 1983." (Citations omitted)). The Court relies on that reasoning here.

Plaintiffs are welcome to plead these claims as federal violations of the Medicaid Act—on any applicable state statute—but not generally under § 1983. Counts VI, VII, VIII, and IX are DISMISSED.

### E.   Counts X and XI – Negligence per se

Counts X and XI are likewise Negligence per se claims, but were correctly brought under two Idaho statutes relative to "vulnerable children" and "vulnerable adults." Each is

---

[5] *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S. Ct. 1353 (1997).

[6] Plaintiffs appear to recognize some editing may be necessary. "To the extent explicit reference in the Amended Complaint should include the above cited U.S. Code sections of the Medicaid Act or revise the labeling to strike reference to negligence, Plaintiffs respectfully request permission to amend the Amended Complaint." Dkt. 41, at 26.

brought against the individual capacity defendants. In short, Plaintiffs claim that Defendants engaged in abusive or other inhumane behavior and failed to report the same.

Idaho Code § 16-1605(1)—vulnerable children—requires that any:

> person having reason to believe that a child under the age of eighteen (18) has been abused, abandoned or neglected or who observes the child being subjected to conditions or circumstances that would reasonably result in abuse, abandonment or neglect shall report or cause to be reported within twenty-four (24) hours such conditions or circumstances to the proper law enforcement agency or the department.

Idaho Code § 39-5303(1)—vulnerable adults—requires that any employee of a "state-licensed or certified residential facility serving vulnerable adults . . . who has reasonable cause to believe that a vulnerable adult is being or has been abused, neglected or exploited shall immediately report such information to the commission."

Defendants assert Plaintiffs' Amended Complaint fails to set forth sufficient facts to support either claim and that "at the very least, the individual Defendants need to know the specific abuse or occurrence that they are alleged to have failed to report in order to defend themselves against this claim." Dkt. 37, at 16.

Plaintiffs point to two instances—detailed in the "General Allegations" section of their Amended Complaint but not in either Claim X or XI—to support these claims.

The first incident relates to actions taken by Defendant Jason Miller against Plaintiff Nathan Benjamin. Miller purportedly "slammed Nathan's nose into a counter causing injury and bleeding," threatened "to 'kick [Nathan's] f**king ass,'" and called him a "f**kface." Dkt. 7, ¶¶ 163-64. Plaintiffs contend that neither Miller, nor other SWITC staff who witnessed each event, filed any report relative to the actions taken.

The second example relates to deceased Plaintiff Drew Rinehart. Plaintiffs allege that Rinehart died after Defendants Luper and Combs (and other unknown SWITC staff) left him unattended and unobserved in bed for over 6 hours, despite a requirement for observation checks every 30 minutes. Plaintiffs also claim that SWITC log sheets showed observation checks had been conducted on the half hour, and that he had been administered medication at 8:00 a.m., when in fact Rinehart had not been observed during such time or provided such medication. The Coroner ruled the cause of Rinehart's death was asphyxiation. Dkt. 7, ¶¶ 119-20.

Defendants assert that while these examples are included in the Amended Complaint as factual background, they are not included in Plaintiffs' actual claims. As a result, Defendants claim these facts "cannot . . . be considered (much less assumed to be truthful)." Dkt. 42, at 8. Defendants are incorrect as to their second assertion. At this stage, the Court must accept as true all well-pleaded factual allegations. *Iqbal*, 556 U.S., at 663. Thus, the Court assumes the veracity of Plaintiffs' claims.

As for incorporation—or the idea that Plaintiffs did not include the specific instances above in the actual claims—the Court has written on this topic before.[7] That said,

---

[7] As the Court has explained previously, under the principle of incorporation, allegations in one area of a Complaint that support the individual causes of action (even if not specifically reiterated in a later cause of action) are sufficient under *Iqbal* and *Twombly. See Sagastume v. RG Transportation, Inc.*, No. 4:18-CV-00361-DCN, 2019 WL 2218986, at *8 (D. Idaho May 21, 2019) (finding that while the plaintiff had not stated a particular fact in a claim section of his complaint, this omission did not warrant dismissal of that claim as those facts were stated earlier and the plaintiff had incorporated those paragraphs in the relevant section). The Court would note, however, that in *Sagastume,* there was one plaintiff, one defendant, and six causes of action stemming from a single underlying situation. In that case, it was apparent that the facts listed in the background were associated with the claims. In this case, however, such is not as readily apparent since there are seven named Plaintiffs asserting twenty causes of action against eleven named Defendants. In short, while facts from the background of Plaintiffs' Amended Complaint can be

it is not clear that those facts (relative to Benjamin and Rinehart) were meant to be included in these two negligence claims (as opposed to any other claims) and, even reading such facts into these two claims, it is still difficult to ascertain the basic who, what, where, when, and why necessary to put Defendants on notice of the claims against them. Plaintiffs state that "certain plaintiffs" suffered harm, that "Defendants" behavior "constitute[d] abuse", and that "Defendants failed to properly report the maltreatment of certain Plaintiffs." Dkt. 7, ¶¶ 250-252, 257-59. These generalized assertions are insufficient. It appears Plaintiffs have some facts that *may* support such a claim—they simply need to state them within the claims themselves and with more particularity.[8] Defendants' Motions to Dismiss Claims X and XI are GRANTED.

### F.  Count XII – Assault

In Count XII, Plaintiffs claim that "Defendants[] caused Plaintiffs and Class Members apprehension or fear of immediate harm or offensive contact through the excessive and repeated use of coercion, threats, abuse, intimidation and neglect." Dkt. 7, ¶ 263. As above, this is insufficient to put Defendants on notice of who purportedly committed any assault, when, how, and against which Plaintiff/s.

"Assault is an unlawful threat or offer to do bodily harm or injury to another." *Miller v. Idaho State Patrol*, 252 P.3d 1274, 1289 (Idaho 2011) (alteration omitted) (citation

---

"incorporated" in later claims, it would be helpful if Plaintiffs took the time to specify which facts give rise to the which claims—and vis-à-vis which Plaintiffs and which Defendants.

[8] The pleading standards of *Iqbal* and *Twombly* do not require an all-inclusive or hyper-detailed list of facts and conclusions. Discovery will flesh out these issues. Nonetheless, there must be enough in Plaintiffs' Amended Complaint to apprise Defendants of the people and actions at issue for each Count.

omitted). Idaho Civil Jury Instruction 4.30 properly states the elements of civil assault as follows:

> The plaintiff has the burden of proving each of the following propositions:
> 1. The defendant acted intending to cause harmful or offensive contact with the person of the plaintiff or a third person, or an immediate fear of such contact; and
> 2. As a result, the plaintiff feared that such contact was imminent.

In their Amended Complaint, Plaintiffs fail to allege any facts that comport with the above definitions. Now, in their briefing for the instant motions, Plaintiffs point to the DRI report and allegations that an unknown and unidentified SWITC staff member told a resident to shut up while raising his fist and that an unknown staff member told a resident "you get involved with staff, you're going to get hurt. That's how it ends." *See* Dkt. 41 at 16 (citing Dkt. 7-1 at 8, 19-20). These "facts," however, are not a part of Plaintiffs' Amended Complaint, nor do they put any particular defendant on notice of what they purportedly did. If Plaintiffs wish to save this claim, more details are necessary. Defendants' Motions to Dismiss Count XII are GRANTED.

### G. Count XIII – Battery

In Count XIII, Plaintiffs assert that "Defendants intentionally caused harmful or offensive contact with the person of Plaintiffs and Class Members or anything worn or held by or closely connected with them, without consent or privilege." Dkt. 7, at ¶ 269.

"Civil battery consists of an intentional, unpermitted contact upon the person of another which is either unlawful, harmful or offensive." *Neal v. Neal*, 873 P.2d 871, 876 (Idaho 1994) (citation omitted).

MEMORANDUM DECISION AND ORDER - 16

Besides the formulistic recitation of the elements of a claim for battery and generalized statements, Plaintiffs offer little to alert Defendants to any specific instances of battery. Similar to their assault claim, Plaintiffs appear to have facts that *could* support a claim for battery, however, they have not actually included those facts in this cause of action. Accordingly, as before, if Plaintiffs wish to save this claim, more details are necessary. Defendants' Motions to Dismiss Count XIII are GRANTED.

### H.  Count XV – Intentional Infliction of Emotional Distress

Plaintiffs bring Count XV against the individual capacity Defendants alleging—again, in the abstract without any specific instances cited—that Defendants' conduct was intentional and reckless and caused Plaintiffs distress. Dkt. 7, ¶¶ 281-83.

As before, while there are instances outlined in Plaintiffs' Amended Complaint that *at this stage* may support a claim for intentional infliction of emotional distress, Plaintiffs must actually plead those facts. Plaintiffs do a good job of outlining those instances in their briefing on the current motion; they must do the same in their Amended Complaint.

Again, to some degree, this is merely a restructuring of the Amended Complaint—organizing the facts and arguments so Defendants can ascertain what Plaintiffs are accusing them of. While it may seem like a formality, the Court does not see this as elevating form over substance—as Plaintiffs assert—but meeting the requisite, threshold requirements under *Iqbal* and *Twombly* so that Defendants can properly defend themselves. The Court is not looking for every detail, but enough to know approximate circumstances outlining which Defendant/s allegedly injured which Plaintiff/s.

On that note, Plaintiffs' Counsel asserts that many of the Plaintiffs in this case are disabled, even non-verbal, and that Defendants' continuing allegations of insufficient pleadings are "effectively exploiting Plaintiffs disabilities." Dkt. 41, at 16. As previously mentioned, Plaintiffs are represented by competent counsel and the deficiencies the Court has outlined today have more to do with the structure and drafting of the Amended Complaint than with Plaintiffs' individual abilities. The Court is sympathetic to Plaintiffs' abilities, but there is no exploitation in requiring their counsel to comply with the Federal Rules of Civil Procedure. Vague hypothetical causes of action are not appropriate. If information is difficult to come by, so be it. But Plaintiffs must still include what details they presently have—and in the proper form—to comply with applicable pleading standards. If they do not have the details now, amendment might have to wait until discovery fleshes those issue out. At that point, Plaintiffs are more than welcome to file a Motion to Amend.

Accordingly, Defendants' Motions to Dismiss Claim XV are GRANTED. As with all other claims dismissed by the Court thus far, leave to amend will be given.

I. *Count XVI – Misrepresentation*

Count XVI alleges that Defendants are liable for misrepresentation through their silence, claiming that they had an obligation to disclose the falsities of SWITC's Mission Statement. Said another way, Plaintiffs claim Defendants made false and misleading representations because they claimed to provide certain services—as outlined in SWITC's mission statement—but failed to actually do so.

MEMORANDUM DECISION AND ORDER - 18

In order to prove misrepresentation or fraud, a plaintiff must prove the following elements: (1) a statement of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent to induce reliance; (6) the hearer's ignorance of its falsity; (7) reliance by the hearer; (8) the hearer's right to rely thereon; (9) consequent and proximate injury. *Humphries v. Becker*, 366 P.3d 1088, 1096 (Idaho 2016). Defendants argue that a company or organizations' mission statement is not a statement of fact upon which a reasonable person could rely on as "truth" and, therefore, Plaintiffs cannot rely upon it to support a claim of misrepresentation/fraud. Caselaw supports this assertion. *See e.g., Posluns v. Educ. Mgmt. Corp., LLC*, No. 4:10-CV-01294 SWW, 2010 WL 5346886, at *7 (E.D. Ark. Dec. 21, 2010), *aff'd*, 436 F. App'x 724 (8th Cir. 2011) ("[M]ission Statement are not statements of fact sufficient to constitute misrepresentations . . . ."). However, such is not a given. In each case, the Court must, nonetheless, analyze the appropriate factors to determine whether misrepresentation has actually occurred. *See Sibley v. St. Albans Sch.*, 134 A.3d 789, 813 (D.C. 2016) (analyzing the appropriate misrepresentation factors and *then* determining the mission statement in question was truthful and that no reasonable juror would rely on the mission statement as a guarantee).

Thus, the Court cannot say at this point that simply because the statement at issue is a mission statement it cannot form the basis of a claim for misrepresentation.

That said, Plaintiffs wholly fail to allege any specific facts supporting the conclusory contention that Defendants knew the mission statement was false or intended to induce reliance on the same, if and/or how Plaintiffs "relied" on the mission statement, and the nexus between the mission statement and any proximate injury—all requisite elements in

a claim for misrepresentation.

The Court will, therefore, GRANT Defendants' Motions to Dismiss Claim XVI but allow Plaintiffs an opportunity to amend Count XVI to better comply with Federal Rules of Civil Procedure 8 and 9.

*J.  Counts XII, XIII, XV, and XVI – Immunity*

Rather than addressing immunity in the applicable individual claims above, the Court does so collectively here.

Defendants and Joining Defendants assert that the individual capacity Defendants are entitled to immunity under the Idaho Tort Claims Act ("ITCA") for Plaintiffs' assault, battery, emotional distress, and misrepresentation claims.

Plaintiffs argue that Defendants have brought this motion too early because immunity is an affirmative defense and not one of the enumerated bases for dismissal under Rule 12(b)(6). Further, Plaintiffs point out that immunity is only available if a defendant acts without malice or criminal intent and that while they have pleaded such in their Amended Complaint, the Court cannot really rule on this until the Summary Judgment stage after discovery is complete. Defendants do not disagree with Plaintiffs that immunity is an affirmative defense, but argue that because it is so clear from the face of the complaint that immunity applies, the Court should grant their request now. The Court disagrees.

At this stage, the Court does not know whether Defendants acted with malice or criminal intent, but must take Plaintiffs' allegations at face value. Thus, immunity is not a given. That said, the Court has already determined that each of the underlying ITCA claims at issue here must be dismissed and re-plead with sufficient facts to put Defendants on

notice. Thus, the Court really is not in a position to make a determination on immunity until Plaintiffs file their Second Amended Complaint. Even then, however, the Court would be reluctant to entertain any "immunity" motion until after discovery has been conducted. For these reasons, the Court DENIES Defendants' immunity arguments at this time.

### K.  Count XVII – Negligent Misrepresentation

Defendants move to dismiss Plaintiffs' Claim of Negligent Misrepresentation, noting that the Idaho Supreme Court has strictly and narrowly confined the tort of negligent misrepresentation to professional relationships *involving an accountant. Duffin v. Idaho Crop. Imp. Ass'n*, 895 P.2d 1195, 1203 (Idaho 1995). Plaintiffs do not contest the request. Dkt. 41, at 29 n. 21. Accordingly, Claim XVII is DISMISSED without leave to amend.

### L.  Count XVIII – Consumer Fraud and Deceptive Trade Practices

Plaintiffs' XVIII claim is based, once again, on SWITC's mission statement and their belief that Defendants violated the Idaho Consumer Protection Act ("ICPA") because their "practices were misleading, false and deceptive to consumers of the SWITC programs." Dkt. 7, ¶ 314.

The purpose of the ICPA is to protect consumers from unfair and deceptive practices. *Doble v. Interstate Amusements, Inc*., 372 P.3d 362, 364 (Idaho 2016) (citation omitted). The ICPA provides that "'(a)ny person who purchases or leases goods or services and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by ... (the) act,' may file an action for damages." *Haskin v. Glass*, 640 P.2d 1186, 1189 (Idaho Ct. App. 1982) (citing Idaho Code § 48-608(1)). In order to have standing under the

ICPA, "the aggrieved party must have been in a contractual relationship with the party alleged to have acted unfairly or deceptively." *Taylor v. McNichols*, 243 P.3d 642, 662 (Idaho 2010) (citations omitted).

Plaintiffs claim that Defendants displayed conduct prohibited by Idaho's consumer protection laws and that they—as "customers" of Defendants services—lost assets such as "degraded coping skills, daily life skills[,] and related items." Dkt. 41, at 24.

This claim, however, is something of a stretch. First, it is difficult to say that Plaintiffs "purchased or lease[d] goods or services" from any of the individual capacity Defendants. If anything, Plaintiffs "purchased" something from the State of Idaho or maybe SWITC, but not from any individual Defendant. Second, by failing to allege that Plaintiffs had a contractual relationship with the Defendants, Plaintiffs fail to demonstrate standing under the ICPA. Simply put, there is no contractual relationship between individuals who resided at SWITC and individuals who are employed there. Third, Plaintiffs do not identify any actionable wrongdoing on the part of the individual capacity defendants or outline any ascertainable loss of money or property.

These deficiencies warrant dismissal of this claim. Defendants Motions are, therefore, GRANTED as to Claim XVIII.

### M. Count XIX – Wrongful Death

Plaintiffs' wrongful death claim is brought against Defendants Combs, Luper, Newton, and other unknown persons. Dkt. 7, at 52. This claim relates to Plaintiff Rinehart and is brought by the personal representative of his estate—and sister—Jamie Foruria.

Defendants argue this claim must be dismissed because Foruria lacks standing to bring such a claim under Idaho's wrongful death statute.

Idaho's wrongful death statute outlines that "When the death of a person is caused by the wrongful act or neglect of another, his or her heirs or personal representatives on their behalf may maintain an action for damages against the person causing the death[.]" Idaho Code § 5-311.

The crux of the parties' disagreement here is the interplay and interpretation of the words "heirs or person representatives on *their* behalf." Defendants allege that even though Foruria is the personal representative of Rinehart's estate, because Plaintiffs have not stated that she is an heir or personal representative *of one of Rinehart's heirs,* she doesn't enjoy standing under Idaho Code Section 5-311. Defendants assert the personal representative requirement is only satisfied when a personal representative of an heir brings the claim (not the personal representative of the estate). Thus, in Defendants estimation, "their" refers back to the heirs and, accordingly, the statue allows for "heirs or the person representative on their (the heirs) behalf" to bring a wrongful death claim.

In response, Plaintiffs interpret the personal representative clause as relating to the decedent, not the heirs, and argue Foruria has standing as the personal representative of *Rinehart's* estate. The statue would, therefore, allow "heirs or the personal representative on their (the descendant's) behalf" to bring a wrongful death claim.

Additionally, because Reinhart's mother and six siblings are living, Plaintiffs assert they will substitute in anyone Defendants feel is necessary to comply with the statute and Defendant's "hyper-technical" arguments. Dkt. 41, at 31, n.23. Defendants reject this offer,

however, claiming they would suffer prejudice should the Court allow Plaintiffs to bring in another Plaintiff at this stage. The Court is not convinced that is truly prejudicial, but Defendants also state the statute of limitations has run on this claim which could prove to be problematic. That said, the Court need not reach these ancillary arguments because it finds Foruria *does* have standing to bring this claim.

Put succinctly, the question before the Court is who "their" refers to in Idaho Code Section 5-311 and, subsequently, who has standing to bring a wrongful death suit in Idaho.

In 2001, Justice Eismann specifically addressed this conundrum in a concurrence in the Idaho Supreme Court case of *Hayward v. Valley Vista Care Corp.*, in which he determined that:

> The personal representative can bring an action for wrongful death, and need not join the heirs as parties. "[A] personal representative . . . may sue in this capacity without joining the party for whose benefit the action is brought." IDAHO R. CIV. P. 17(a). As personal representative, Alfred could bring an action to recover any claims the estate may have, and he could bring a wrongful death action to recover for Delbert's death. There is no need to expressly allege that an action brought by the personal representative is prosecuted "on behalf of the estate" or "on behalf of the heirs." Alfred's capacity is that of personal representative, and in that capacity he could bring either a survival action (if Idaho recognized such action) or a wrongful death action.

33 P.3d 816, 827 (2001).[9]

---

[9] Justice Eismann also specifically noted that:

> The statute is ambiguous as to whether the phrase "personal representatives" means the personal representatives of the decedent or the personal representatives of the heirs. The statute could be read to have "personal representatives" refer to the personal representatives of the heirs. That argument would be based upon the fact that a decedent usually has only one personal representative. Thus, the reference to "personal representatives" (plural) must refer to the personal representatives of more than one person, and "heirs" is the only plural noun to which the phrase could refer. Later in the statute, however, the phrase "personal representatives" clearly refers to the personal representatives (plural) of a single decedent.

MEMORANDUM DECISION AND ORDER - 24

A year later, the Idaho Court of appeals likewise determined that they would "construe I.C. § 5–311(1) to use 'personal representative' to mean the personal representative of the *decedent,* not of the *heirs.* Thus, an action may be maintained for wrongful death of a person by the decedent's heirs or the decedent's personal representative on behalf of the heirs." *Hagy v. State*, 51 P.3d 432, 437 (Ct. App. 2002) (emphasis in original).

This is a bit of a nuanced topic. In *Farm Bureau Mut. Ins. Co. of Idaho v. Eisenman,* the Idaho Supreme Court explained that a descendant's estate (or the personal representative of the estate) cannot independently bring a wrongful death claim because the estate steps into the shoes of the decedent and can only bring claims (on the decedent's behalf) that were valid during the decedent's life. 286 P.3d 185, 189-90 (Idaho 2012). Thus, the Idaho Supreme Court reasoned that as a result, an estate is not "legally entitled to recover damages for the decedents wrongful death" because that cause of action is "entirely new" and "distinct from any action the decedent may have brought on her own behalf, prior to her death." *Id.*

---

The statute states, "If any other person is responsible for any such wrongful act or neglect, the action may also be maintained against such other person, or in case of his or her death, his or her personal representatives." If "personal representatives" were read to mean the personal representatives of the "heirs" of the decedent, it would transform Idaho Code § 5–311 into a form of survival action. That reading would provide that an heir's claim for wrongful death would survive the heir's death and could be brought by the heir's personal representative. There is nothing indicating that Idaho Code § 5–311 was intended by the legislature to be in part a survival statute. Therefore, the phrase "personal representatives" should be read as referring to the personal representatives of the decedent.

33 P.3d 816 at 827, n.5.

After explaining this dichotomy however, the Supreme Court reiterated that even though an estate (or personal representative of an estate) could not pursue a wrongful death claim *for the benefit of the estate,* an "estate may pursue a wrongful death claim on behalf of the Heirs" because "the personal representative's role in the context of wrongful death actions is only 'as trustee for the heirs.'" *Id.* citing *Whitley v. Spokane & I. Ry. Co.,* 132 P. 121, 126 (1913), *aff'd sub nom. Spokane & I.E.R. Co. v. Whitley*, 237 U.S. 487 (1915).

Thus, upon review, it is clear that two person/s can bring a claim for wrongful death under Idaho Code Section 5-311: (1) the decedent's heir/s, or (2) the *decedent's* personal representative *on behalf of the heirs.* Accordingly, the Court finds that Foruria does have standing to bring Claim XIX on behalf of Rinehart's heirs (and independent of whether she actually is an heir or not).

Defendants' Motions to Dismiss as to Claim XIX are, therefore, DENIED.

*N.  B.B.'s Claims*

Finally, Defendants contend that all of the claims asserted by B.B. should be dismissed because he fails to allege any facts against any Defendant to put them on notice of his claims. Plaintiffs explain that B.B.—while 13 years old—functions at the level of a 15-month-old and is nonverbal. As a result, he cannot express what happened to him at SWITC, but his mother has tried "to explain . . . what she observed and experienced with respect to B.B.'s treatment at SWITC." Dkt. 41, at 31. In their reply, Defendants retreat slightly from their position, but reaffirm that even if B.B. is nonverbal, it is "insufficient for [B.B.'s mother] to allege that 'someone' at SWITC committed the acts she alleges." Dkt. 42, at 15. Because she has failed to identify "dates or the offending individuals . . .

[Defendants are not] on notice of the pending claims." *Id.*

Difficult as it may be, the Court must agree. Until B.B.—or his mother—can put forth some, even minimal, details relative to any cause of action, his claims must be dismissed.

### O. *Luke Brisbane*

Defendants claim that Plaintiffs have named Luke Brisbane as a defendant in this case, but that the only "Luke" served was a person by the name of Luke Gushwa. Dkt. 26. Plaintiffs explain that an individual they originally thought was named Luke Brisbane is actually named Luke Gushwa.

At oral argument, Defendants represented that they would not oppose Plaintiffs substituting the correct "Luke" in this case. Accordingly, Plaintiffs may substitute in Luke Gushwa when they filed their Second Amended Complaint.

## V. ORDER

1. Defendants' Motion to Dismiss (Dkt. 37) is GRANTED in PART and DENIED in PART as outlined above. Defendants' motion is granted in that Claims II, III and IV (as to the individual capacity defendants), V, VI, VII, VIII, IX, X, XI, XII, XIII, XV, XVI, XVII, and XVIII are dismissed. Defendants' Motion is denied in that Count III and Count IV may proceed against Defendants State of Idaho, DHW (including SWITC), and Ms. Newton in her official capacity, and Count XIX may proceed as pleaded.

2. Joining Defendants' Motion to Dismiss (Dkt. 38) is GRANTED in PART and DENIED in PART in like manner.

3.  Pursuant to Ninth Circuit caselaw, the Court will grant Plaintiffs an opportunity to cure the deficiencies outlined above. Plaintiffs shall have 60 days from the date of this order to file a Second Amended Complaint.[10]

DATED: April 20, 2020

David C. Nye
Chief U.S. District Court Judge

---

[10] Plaintiffs need not amend every claim. For example, the Court's position on Claims II, III and IV (as to individual capacity defendants), and V is fairly clear. These claims appear *legally* foreclosed; thus, it is extremely unlikely that Plaintiffs could remedy the Court's concerns. Other claims (Claims VI – IX, XII, and XIII for example) are easier to remedy as the deficiencies are not legal, but factual. That said, Plaintiffs may proceed with their case as they see fit. The Court simply advises Plaintiffs to take the time necessary to accurately plead and sufficient support each claim they wish to bring.

MEMORANDUM DECISION AND ORDER - 28